## 44159. WOOD v. BRUNSWICK PULP & PAPER COMPANY et al.

ARGUED JANUARY 14, 1969—DECIDED JUNE 6, 1969—REHEARING DENIED JULY 29, 1969—

*Altman & Herndon, Michael Herndon,* for appellant.

*Forester & Calhoun, Frank L. Forester, Marcus B. Calhoun, Frank S. Twitty, Jr., John M. Gayner, III,* for appellees.

HALL, Judge. The Supreme Court of Georgia recently emphasized that the "trial of all issues of fact by a jury was not intended to be abrogated by the summary judgment statute. . . The summary judgment is a vital provision to accomplish its worthy and obvious objective, to avoid frivolous delays in judgment, but it carefully preserves the province of a jury to decide issues of fact." *Ginn v. Morgan,* 225 Ga. 192, 194 (167 SE2d 393).

The case law of Georgia as expressed by this court is in keeping with this mandate: "On motion for summary judgment, the movant has the burden of showing the absence of any genuine issue of material fact, and the opposing party is given the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence. *Holland v. Sanfax Corp.,* 106 Ga. App. 1, 4 (126 SE2d 442); *International Brotherhood v. Newman,* 116 Ga. App. 590, 592 (158 SE2d

298). The movant 'has this burden even as to issues upon which the opposing party would have the trial burden. And the moving party's papers are carefully scrutinized, while the opposing party's papers, if any, are treated with considerable indulgence.' *Colonial Stores, Inc. v. Turner,* 117 Ga. App. 331, 333 (160 SE2d 672); 6 Moore's Federal Practice (2d Ed.) 2853, § 56.23." *Sanfrantello v. Sears, Roebuck & Co.,* 118 Ga. App. 205, 206 (163 SE2d 256). See also *Capital Automobile Co. v. G. M. A. C.,* 119 Ga. App. 186, 192 (166 SE2d 584); *Boatright v. Padgett Motor Sales,* 117 Ga. App. 578, 581 (161 SE2d 402); *Raven v. Dodd's Auto Sales &c., Inc.,* 117 Ga. App. 416, 420 (160 SE2d 633); *Woody v. Ralston Purina Co.,* 117 Ga. App. 352 (160 SE2d 662).

Has Brunswick carried the burden of showing as a matter of law that no inference can be drawn from the evidence that Morris was in fact the alter ego of Brunswick? If the answer is negative, this issue must go to a jury. If the evidence authorizes an inference that the contract with Morris was not made by Brunswick in good faith but for the purpose of avoiding liability, the case should go to a jury. *Talmadge v. Tift,* 25 Ga. App. 639 (104 SE 91). If the evidence authorizes an inference that Morris was subject to Brunswick's control, the case must go to the jury. *Brown v. Smith & Kelly,* 86 Ga. 274, 277 (12 SE 411, 22 ASR 456).

In his original answer Morris admitted in response to the plaintiff's petition that he was an employee of Brunswick. However, after Brunswick's answer was filed denying the same and alleging that Morris was an independent contractor, Morris then amended his answer so that it then conformed to Brunswick's answer. This is an admission which can be offered in evidence at the trial even though Morris will have a right to explain it. *Alabama Midland R. Co. v. Guilford,* 114 Ga. 627 (1) (40 SE 794); *Bynes v. Stafford,* 106 Ga. App. 406, 408 (127 SE2d 159). It is contended that in view of the fact that this admission was stricken it cannot be considered on motion for summary judgment. The fallacy of this contention is that it fails to distinguish between a motion for summary judgment and a trial. In a trial, this admission must be introduced

in evidence in order for the same to be considered by the jury. *Sellers v. Sellers*, 76 Ga. App. 410 (2) (46 SE2d 205). However, *Code Ann.* § 81A-156 (c) provides that the court shall, on motion for summary judgment consider "the *pleadings,* depositions, answers to interrogatories, and *admissions on file* . . ." These matters do not have to be introduced to the judge. Admissions refer to "any material that is on file" and the judge can "take judicial notice of the entire record." 6 Moore's Federal Practice 2146, 2208.

The formal contract between Brunswick and Morris was prepared by Brunswick and by its terms establishes the relationship of Morris as an independent contractor. It provides for execution of writings by the parties from time to time in the form of specific delivery orders designating work to be performed under the contract. The evidence discloses that Morris frequently did work for Brunswick without such writings being executed and that it was often done after the work had been completed, and there was no such writing for the work out of which the present action arises. Morris testified that all his work was for Brunswick except they let him haul for one other company "now and then" to try "to make a dollar." He testified that he considered Brunswick "his primary employer"; that he considered Brunswick's area manager to be "my district manager"; that when he paid the men under him, the money was supplied by Brunswick—"It's handed down to me and I hand it down to them"; and that the insurance for the men who worked under him was handled entirely by Brunswick. One of the men Morris supervised testified that Brunswick's area manager (Hudspeth) came to this project and on this and other occasions "he would supervise operations generally and inspect the work that had been done"; that he "was the bossman" and in explaining this statement said "Mr. Morris gave affiant orders after talking to Mr. Hudspeth."

The law is not impotent. It provides a means for determining whether a litigant has used a subterfuge to avoid its mandate. The trial court erred in deciding this question as a matter of law. There is a genuine issue of fact as to whether Morris was an independent contractor or the mere alter ego of Brunswick.

*Judgment reversed. Felton, C. J., Bell, P. J., Pannell and Deen, JJ., concur. Felton, C. J., also concurs specially. Jordan, P. J., Eberhardt, Quillian, and Whitman, JJ., dissent.*

FELTON, Chief Judge, concurring generally and specially.

I concur in the judgment of reversal and in the four-judge opinion generally, on the theory that if the questions dealt with by the four-judge opinion are reached, the case should be reversed because jury questions are involved.

I also concur specially because, while I think the four-judge opinion is correct if the question covered is reached, I think all of my fellow judges have overlooked an exceedingly vital question of law which to my mind is so vital that it should be confronted and decided. Can a prime contractor who is employed as an independent contractor to perform work for an owner or employer where the person employing the independent contractor does not contemplate that the independent contractor he employs will employ still another independent contractor without his knowledge or consent, avoid responsibility for the obligations and liabilities to the employer or owner and others under the original contract by employing a sub-independent contractor without the owner's consent?

On motion for a summary judgment the burden of proof was upon the appellee Paper Company. To carry this burden, it would have to show *two* things: first, that the owner of the pulpwood (a Mrs. Gailey), who gave the Paper Company the right to cut it, consented for the Paper Company to delegate its duties and obligations to Mrs. Gailey under the contract of sale of her pulpwood rights, to an independent contractor, who would owe Mrs. Gailey only his obligations as an independent contractor. This burden was on the Paper Company because the law places it there and because the Paper Company knew what the contract was and presumably had the original or duplicate copy of the contract. This burden was not carried and the question of a delegation to an independent contractor, which would be the second thing the movant would have to show, cannot come into play because, unless consent of Mrs. Gailey is shown, there could be no independent contractor as to anybody.

*Code* § 20-1101 provides as follows: "Performance, to be effectual, must be by the party bound to perform, or his agent (where personal skill is not required), or someone substituted, *by consent*, in his place." (Emphasis supplied.) This statute was not repealed by the enactment of the Uniform Commercial Code, but rather was reinforced by at least one portion thereof, namely *Code Ann.* § 109A-2—210 (1) (Ga. L. 1962, pp. 156, 181), which provides as follows: "A party may perform his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract. *No delegation of performance relieves the party delegating of any duty to perform or any liability for breach.*" (Emphasis supplied.) It follows from the above that the Paper Company was not relieved, by its delegation of the performance of its contract without the landowner's consent, of its duty to perform the contract in the exercise of ordinary care to prevent injury to the property and its consequential liability to the adjoining landowner for damages for the breach of said duty on the part of the Paper Company's delegate, which is presumed to be unauthorized in the absence of the production of evidence to the contrary by the Paper Company.

Even if the necessary consent was shown, however, and it be assumed that defendant Morris is an independent contractor, it does not necessarily follow that his employer, the contracting Paper Company, would escape liability under the provisions of *Code* § 105-501, which states the general rule. *Code* § 105-502 provides: "The employer is liable for the negligence of the contractor . . . 4. [i]f the wrongful act is the violation of a duty imposed by statute." Such a duty is imposed by statute in reference to "firing the woods." *Code Ann.* § 26-3601. Persons who "permit fire to get into the woods . . . through neglect" are guilty of a misdemeanor. *Code Ann.* § 26-3602. Under these circumstances, the contractee-employer has a nondelegable duty to third persons to the contract, on the theory that its responsibility is so important to the community that the employer should not be permitted to transfer it to another. As was pointed out in *Rodgers v. Styles*, 100 Ga. App. 124,

132 (110 SE2d 582), "the defendants here had a duty, irrespective of any contractual obligation, not to negligently set fire to and burn property of the plaintiffs." In this regard see, generally, Prosser, Handbook of the Law of Torts, Chap. 13, § 70, p. 480 et seq.; Ibid., Chap. 14, § 76, p. 517; 57 CJS 352 et seq., Master and Servant, §§ 580-610.

*Code* § 105-103 provides: "When the law requires one to do an act for the benefit of another, or to forbear the doing of that which may injure another, though no action be given in express terms, upon the accrual of damage the injured party may recover." Under this section, the plaintiff might recover damages, assuming that the other requirements for recovery hereinabove stated were met, for the defendant Paper Company's failure to perform its nondelegable statutory duty of forbearing the firing of the woods. This question has not been ruled on. It arose in *Guthrie v. Robbins Home Improvement Co.*, 94 Ga. App. 578 (95 SE2d 737). The Supreme Court reversed this court, 213 Ga. 138. However the Supreme Court did not reverse the principle of law declared by this court but construed the evidence as showing that the owner knew that the prime contractor had employed a subcontractor with the owner's consent simply because the owner *talked to the subcontractor*. This court did not think the evidence showed the owner's consent because the evidence did *not show that the owner knew* that at the time he talked to the *subcontractor he was a subcontractor of the prime contractor* rather than a mere servant. This court cited *Wood v. Frank Graham Co.*, 91 Ga. App. 621 (86 SE2d 691) for the principle held to apply in that case. The facts in that case are different, but the principle is clear.

JORDAN, Presiding Judge, dissenting. The sole question here is whether, as a matter of law, we can determine that the defendant Morris was an independent contractor in relationship to the defendant Brunswick. The construction of the contract here involved is for the court, not the jury.

Whether the relationship of the parties is that of employer and servant or that of employer and independent contractor lies in whether the contract gives or the employer assumes the right to control the time, manner, and method of executing the work

as distinguished from the right merely to require certain results in conformity with the contract. *Yearwood v. Peabody,* 45 Ga. App. 451 (2) (164 SE 901); *Harvey v. C. W. Matthews Contr. Co.,* 114 Ga. App. 866 (3) (152 SE2d 809); *Fidelity & Cas. Co., v. Windham,* 209 Ga. 592, 593 (74 SE2d 835).

Here, if there is no genuine issue of fact whereby a jury could determine the existence of an employer-employee relationship between the defendant paper company and the defendant Morris for application of the doctrine of respondeat superior, the defendant paper company is entitled to summary judgment. The evidence discloses that Morris conducted his business with the paper company under a master contract providing, among other things, for payment of a specified amount for each ton of pulpwood cut and delivered from lands on which the paper company had cutting rights, plus a specified amount of mileage per ton for truck travel between the point of loading and the point of delivery. The contract further provides that the paper company shall designate in writing the quantities desired, the point of delivery, a time schedule for delivery, and the areas from which trees are to be cut, and that Morris is responsible for employing and paying all persons used by him in performing under the contract, and for furnishing all materials and equipment. In this contract the paper company expressly disavowed any right of control, supervision, or oversight over Morris or his servants, agents, or employees, or the manner, method, or means by which Morris conducted his operations. In actual practice it appears that the company, through a contract administrator, often informed Morris orally of its requirements, and later confirmed or ratified these acts, and no writing specifically covering the operation here in question was produced. In actual practice it also appears that Morris did pay his employees, on a piece-rate basis, but that the company withheld from its payment to Morris premiums to cover some form of life insurance on persons employed by Morris, and some amount to cover payment for equipment furnished to Morris, which was not used in the operation here involved.

To overcome the express provisions of this contract the plaintiff relies on an affidavit of one of the employees of Morris at

the time to the effect that he considered himself to be cutting "for Brunswick Pulp and Paper Company," that Hudspeth, the contract administrator, came to the woods on the day of the fire, would talk with Mr. Morris, inspect the work and supervise operations generally, and that "Mr. Hudspeth was the boss man."

Inasmuch as it is clear that this affiant was in fact hired and paid for his work by Morris, and that he received his instructions from Morris, we do not regard his conclusions that he was working for the paper company, and that the paper company's contract administrator was the "boss man," as of any probative value to create a genuine issue of material fact from which a jury could determine a master-servant relationship between the paper company and Morris, and thus override the clear intent of the contract between the paper company and Morris, as substantially followed in actual practice, under which Morris worked as an independent contractor to produce certain desired results, and for which he was paid, without any direction or control over the means used to accomplish these results, including persons employed or equipment used.

Under the majority opinion as written, this court could never construe a contract on summary judgment as creating the relationship of independent contractor, thus abandoning to the jury a long intrenched prerogative of the courts.

The judgment of the trial court should be affirmed. I am authorized to state that Judges Eberhardt and Quillian concur in this dissent. Judge Whitman concurs specially in this dissent.

WHITMAN, Judge, concurring specially in dissent. I concur in the dissenting opinion of Presiding Judge Jordan, and would add the following: Motion for summary judgment by Brunswick Pulp & Paper Company, one of the defendants below and appellee here, and hereafter referred to as Brunswick, is based in part upon the pleadings. Paragraph 4 of appellant Wood's original complaint against appellee and co-defendant Morris alleges that Morris was an employee, agent and servant of defendant Brunswick, and was engaged in the course of said employment, and paragraph 5 of the complaint alleged that Brunswick as employer, principal and master of defendant Morris is liable for any and all damages resulting from his negligent

acts. By paragraph 4 of his second defense Morris admitted he was an employee of Brunswick. However, by an amendment to his answer Morris struck paragraphs 4 and 5 of his second defense in their entirety and inserted in lieu thereof a new paragraph numbered 4, in which he denied the allegations of paragraphs 4, 5 and 6 of the plaintiff's complaint, and alleged that his relationship with Brunswick was that of an independent contractor. This state of the pleadings is mentioned in appellant's brief but apparently the original admission of Morris in respect of employment is not relied on, it being asserted in appellant's brief that "the issue on appeal is whether or not, from the pleadings, interrogatories and answers thereto, deposition and affidavits, there exists a genuine issue of material fact as to (1) whether or not J. D. Morris was the employee, servant or agent of appellee at the times complained of, and, if not, (2) whether or not appellee retained or assumed the right to control the method and means of J. D. Morris' performance of his work for appellee at said times, so that the doctrine of respondeat superior would apply." The original answer of defendant Morris admitting paragraph 4 of the complaint was not offered or admitted in evidence on the hearing of the motion for summary judgment. By being stricken, the admission by defendant Morris in his original answer was after the amendment no longer a part of the pleadings in the case and without effect in the determination of the motion for summary judgment. See *Sellers v. Sellers*, 76 Ga. App. 410 (2) (46 SE2d 205); *Hutchins v. McDowell*, 202 Ga. 1, 7 (41 SE2d 300).